## UNITED STATES *v.* MITCHELL.

(*District Court, N. D. New York.* February 22, 1886.)

CONSUL—SUIT ON VICE-CONSUL'S BOND FOR MONEY PAID AS SALARY OF CONSUL, AND NOT PAID OVER.

M., a vice-consul in Japan, being left in charge of the consulate during the absence of the consul, drew on the treasury a draft for expenses and salaries, including $362.78 for salary of the consul, and this amount was duly credited, but subsequently disallowed. The consul received his salary from the government and resigned. The amount paid to M. was never, so far as appeared, paid over to the consul, and the government brought suit on M.'s bond, to recover the amount. *Held,* that it was entitled to recover.

The defendant was from July 1, 1871, to October 1, 1874, vice-consul at Kanagawa, Japan. This action is upon a bond, signed by him as principal; one of its conditions being that he should account for and pay over all moneys received by him in his official capacity. On the twenty-second of October, 1873, Charles O. Shepard, the consul, returned to this country, on leave, giving instructions to the defendant to take charge of his affairs during his absence. On the twenty-seventh of November following, Shepard resigned. It was the custom at the consulate, when the fees received were insufficient to pay salaries and other expenses, to draw upon the secretary of the treasury for the balance. On the second of June, 1874, such a draft was drawn. An account accompanied it. Among other items were the following:

1874, March 31. To salary of Mr. Shepard, late consul, from October 1 to 31, 1873, inclusive, - - - - - $252 72

To salary of Mr. Shepard, late consul, from November 1st to 27th, inclusive, at one-half the salary of the consulate, - - $110 06

It is to recover this sum, ($362.78,) paid to the defendant while acting consul, on account of the salary of the late consul, Shepard, that this action is brought. The account was examined by the fifth auditor, and in August, 1874, the item was apparently allowed as properly paid to and received by the defendant. The mistake was soon after corrected, and in September, 1874, the following entry appears in the treasury accounts: "Salary of C. O. Shepard, adjusted with the late consul, erroneously charged by vice-consul, $362.78." In June, 1874, the same sum appears in Shepard's account as credited him by the fifth auditor. The defendant swore, in substance, that no demand was made upon him till the commencement of this suit, in February, 1885. In the letter of the acting comptroller of December 11, 1884, he refers to the fact that the defendant and his sureties "have ignored the repeated requests of this office for payment of the balance due to the United States."

*Martin I. Townsend,* U. S. Atty., for plaintiff.

*H. J. Swift,* for defendant.

COXE, J. The facts are substantially undisputed. In June, 1874, the defendant received from the plaintiff $362.78. This money did

not belong to the defendant. Upon no possible theory had he a right to retain it as his own. Shepherd resigned in November, 1873. Assuming that the defendant could lawfully draw, six months thereafter, for Shepard's salary, or retain the amount from the fees received at the consulate, it is entirely clear that he could only do this for the purpose of paying the amount to Shepard. If he paid Shepard it would probably afford a sufficient answer to the present claim upon him. But the payment to Shepard was a defense to be pleaded and proved. Upon this record there is no word of evidence that the defendant has ever parted with the money. For aught that appears he may have it at the present time. It is argued on his behalf that the presumption is that he paid it to Shepard. Is this so? When the draft was drawn in June, 1874, Shepard was not consul and not at the consulate. During the same month, June, 1874, the auditor seems to have allowed the amount to Shepard in his account with the government. This necessarily occurred before the draft could have reached this country, and when Shepard and the treasury officers were ignorant of the defendant's action. If inferences are to be indulged in, is it probable that Shepard, having received credit for his salary at the treasury, would again receive it from the defendant? When defendant's draft reached this country, the United States owed Shepard nothing, and never owed him anything thereafter. Shepard could not have taken the money from the defendant without knowing that he had no right to receive it. The presumption would certainly, in the absence of proof, be against such a questionable transaction.

Permission was given to the defendant, at the trial, to amend his answer, and prove payment to Shepard, but he did not avail himself of this opportunity. The case, as it appears upon the proof now before the court, is a simple one. A., residing in New York, owes B., residing in Buffalo, $100. A. sends the money to C., also residing in Buffalo, and receives a receipt acknowledging that he (C.) has received $100 to hand to B. In the mean time B. goes to New York, and receives payment directly from A. Is there any reason why C. should not return the money? There is no presumption that he has paid the money to B. If he has done so in good faith, he should prove it. So, in this case, the defendant received $362.78 from the plaintiff to pay to Shepard. Before he could, in the ordinary course of business, have paid Shepard, the latter received the amount from the plaintiff. If the defendant legally disposed of the sum so received, he should have proved it. Having failed to do so, no reason is seen why he should not now pay it back.

The length of time in bringing this action would be fatal in a case between individuals, but not so where the United States is the party plaintiff.

The plaintiff is entitled to the judgment demanded in the complaint.